Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT
### for the
### District of Oregon

FILED26 MAY '21 09:45USDC-ORP

___Portland_____ Division

| | |
|---|---|
| Donald Sharma (Owner)<br>Stop N Go Mini Mart<br><br>_____<br>*Plaintiff(s)*<br>*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*<br>-v-<br>Robert T. Deegan<br>U.S Department of Agriculture<br>(USDA)<br>_____<br>*Defendant(s)*<br>*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | Case No. **3: 21-CV-810-AC**<br>*(to be filled in by the Clerk's Office)*<br><br>Jury Trial: *(check one)*  ☐ Yes  ☐ No |

## COMPLAINT FOR A CIVIL CASE

### I.    The Parties to This Complaint

#### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Donald Sharma (Stop N Go Mini Mart) |
| Street Address | 2858 N Williams Ave |
| City and County | Portland |
| State and Zip Code | Oregon, 97227 |
| Telephone Number | 971-506-5875 |
| E-mail Address | donaldsharma81@gmail.com |

#### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

# 93425

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Defendant No. 1

| | |
|---|---|
| Name | Robert T. Deegan (U.S. Department of Agriculture) |
| Job or Title *(if known)* | Administrative Review Officer |
| Street Address | 1320 Braddock Place, Fifth Floor |
| City and County | Alexandria |
| State and Zip Code | VA, 22314 |
| Telephone Number | 617-565-6417 |
| E-mail Address *(if known)* | |

Defendant No. 2

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

## II. Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

[✔] Federal question          [ ] Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A. If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.
Portland, Oregon

### B. If the Basis for Jurisdiction Is Diversity of Citizenship

1. The Plaintiff(s)

    a. If the plaintiff is an individual
    The plaintiff, *(name)* _____, is a citizen of the State of *(name)* _____.

    b. If the plaintiff is a corporation
    The plaintiff, *(name)* _____, is incorporated under the laws of the State of *(name)* _____,
    and has its principal place of business in the State of *(name)* _____.

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2. The Defendant(s)

    a. If the defendant is an individual
    The defendant, *(name)* _____, is a citizen of the State of *(name)* _____. Or is a citizen of *(foreign nation)* _____.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

      b.    If the defendant is a corporation

The defendant, *(name)* _____ , is incorporated under the laws of the State of *(name)* _____ , and has its principal place of business in the State of *(name)* _____ .

Or is incorporated under the laws of *(foreign nation)* _____ ,

and has its principal place of business in *(name)* _____ .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

    3.    The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

This is the request for applicable rights to a judicial review due to impose a six month disqualification by the against Stop N Go Mini Mart from participating as an authorized retailer in the supplemental nutrition Assistance Program. Eclose is the Agency Decision of the USDA for your reference!

## IV. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

There is not a law sue for a money or any damages but it has to do with loosing revunue as our store in suspension/disqualifying to accept EBT for period of 6 months. Letter of explianation is enclosed.

## V. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 05/25/2021

Signature of Plaintiff

Printed Name of Plaintiff: Donald Shrama

### B. For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

Attn.: Chief Administrative Review Brunch

USDA, FNS, 1320 Braddock Place, 5th floor

Alexandria, Virginia 22314.

02/25/2021.

To whom it may concern,

I have received the letter from SNAP regarding some non-food items may have been purchased on the SNAP benefit which not supposed to, and this error were caused by our newly POS system while making the changes to the codes for some upgrade!

I have reviewed these errors closely along with itemize receipt included in this package and find out that our POS system had some issue that period, and it failed to differentiate the Food vs Non-Food items. The issue was address immediately and it has been fixed right away.

Since we are family-owned business, and this is our first store and first time into Convenient Store business we are learning new things as we go, and I hope you been seeing other bigger chain making similar mistakes or errors like this who been into this line of work for long period of time.

Our stores have some large amount of grocery's including bigger packs of meats etc., where our owned community folks have most convenient to our store while doing one stop shopping for all.

We understand that one bigger store in our area with similar types of groceries with much higher prices. But consumers now days looking for much comparable prices and they try to avoid bigger lane and time consuming and making the quick stops at smaller stores instead for faster services.

Although we know that any person who is working behind the counter as a cashier should have knowledge of what to accept before making the sale on SNAP benefit vs the regular credit cards or cash.

Our neighborhood is very dependable for SNAP benefits and if for some reason we stop accepting CMP, these elderly folks will have a hard shopping else where for one stop all.

We address this issue very seriously and working hard to train all our clerk to avoid making the same error going forward.

We are begging from bottom of our heart and our community not to suspend us from accepting SNAP benefits. Please this LOE carefully before making any further decision.

Once again, we are deeply sorry for any inconvenience may have cause you and we promised this violation will not happened again.

Thanks

Donald Sharma

Exhibit #1

Exhibit #1

Stop N Go Mini-Mart

2858 N Williams Ave

Portland, Oregon 97227

**United States Department of Agriculture**

USDA

Food and Nutrition Service

Retailer and Issuance Policy and Innovation Division

Administrative Review Branch

1320 Braddock Place, Fifth Floor
Alexandria, VA 22314

Telephone: (617) 565-6417

Fax: (844) 629-0651

robert.deegan@usda.gov

May 19, 2021

Donald Sharma, Owner
Stop N Go Mini Mart
2858 N Williams Avenue
Portland, Oregon 97227-1627

**Re:    Stop N Go Mini Mart, Case Number:  C0241747**

Dear Store Owner:

Enclosed is the Final Agency Decision of the U.S. Department of Agriculture (USDA) Food and Nutrition Service (FNS), in response to the request for administrative review postmarked February 25, 2021. Also included therein is a statement regarding applicable rights to a judicial review.

The USDA has decided that there is sufficient evidence to support the determination by the Office of Retailer Operations and Compliance to impose a six month disqualification against Stop N Go Mini Mart from participating as an authorized retailer in the Supplemental Nutrition Assistance Program.

Sincerely,



ROBERT T. DEEGAN
Administrative Review Officer

Enclosure:  Final Agency Decision

USDA is an Equal Opportunity Provider, Employer, and Lender

Exhibit #2

U.S. Department of Agriculture
Food and Nutrition Service
Administrative Review Branch

Stop N Go Mini Mart,

Appellant,

v.

Office of Retailer Operations and Compliance,

Respondent.

Case Number: C0241747

## FINAL AGENCY DECISION

The U.S. Department of Agriculture (USDA), Food and Nutrition Service (FNS), finds that there is sufficient evidence to support the determination by the Office of Retailer Operations and Compliance to impose a six month disqualification against Stop N Go Mini Mart (hereinafter Appellant) from participating as an authorized retailer in the Supplemental Nutrition Assistance Program (SNAP).

## ISSUE

The issue accepted for review is whether the Office of Retailer Operations and Compliance took appropriate action, consistent with Title 7 of the Code of Federal Regulations (CFR) § 278.6(a), § 278.6(e)(5 and 6), and § 278.6(f)(1) in its administration of the SNAP when it imposed a six month period of disqualification against the Appellant.

## AUTHORITY

According to 7 U.S.C. § 2023 and the implementing regulations at 7 CFR § 279.1, "A food retailer or wholesale food concern aggrieved by administrative action under § 278.1, § 278.6 or § 278.7 . . . may . . . file a written request for review of the administrative action with FNS."

## CASE CHRONOLOGY

USDA investigators conducted an investigation of the compliance of Appellant with federal SNAP law and regulations during the period January 8, 2021, through January 14, 2021. The investigation determined that personnel at the Appellant firm accepted SNAP benefits in exchange for ineligible merchandise on four separate occasions. All four transactions were deemed clearly violative and warrant a six month disqualification period. The items sold are best

1

described in regulatory terms as common nonfood items such as paper and foam plates, foam cups, napkins, and laundry products as well as a major ineligible items that included two packs of cigarettes, a carton of cigarettes, and a six pack of beer purchased in Exhibits C and D. The investigative report indicates that these violative transactions were handled by the same clerk who identified himself to the investigator as being the store owner. It is noted that while the clerk did refuse to traffic SNAP benefits for cash in Exhibit D, he did allow the use of SNAP benefits to purchase ineligible items that included tobacco products and beer in all four Exhibits.

As a result of evidence compiled from this investigation, the Office of Retailer Operations and Compliance informed Appellant, in a letter dated February 11, 2021, that the firm was charged with violating the terms and conditions of the SNAP regulations, 7 CFR § 278.2(a). The letter states, in part, that the violations "... warrant a disqualification period of six months (Section 278.6(e)(5)). The letter also states that under certain conditions, FNS may impose a civil money penalty (CMP) in lieu of a disqualification (Section 278.6(f)(1))."

Appellant responded to the charges in an email dated February 16, 2020. After giving consideration to the evidence, the Office of Retailer Operations and Compliance notified Appellant in a letter dated February 23, 2021, that it determined that violations had occurred at the firm, and that a six month period of disqualification from participating as an authorized firm in SNAP was warranted. This determination letter also states that Appellant's eligibility for a hardship CMP according to the terms of Section 278.6(f)(1) of the SNAP regulations was considered. However, the letter stated "... you are not eligible for the CMP because there are other authorized retail stores in the area selling as large a variety of staple foods at comparable prices."

By letter postmarked February 25, 2021, Appellant appealed the Office of Retailer Operations and Compliance's decision and requested an administrative review of this action. The appeal was granted and implementation of the sanction has been held in abeyance pending completion of this review. No subsequent correspondence was received.

## STANDARD OF REVIEW

In an appeal of an adverse action, Appellant bears the burden of proving by a preponderance of evidence that the administrative action should be reversed. That means Appellant has the burden of providing relevant evidence that a reasonable mind, considering the record as a whole, would accept as sufficient to support a conclusion that the argument asserted is more likely to be true than untrue.

## CONTROLLING LAW

The controlling law in this matter is contained in the Food and Nutrition Act of 2008, as amended (7 U.S.C. § 2021), and implemented through regulation under Title 7 CFR Section 278. In particular, Sections 278.6(a) and (e)(5) establish the authority upon which a six month disqualification may be imposed against a retail food store or wholesale food concern.

7 CFR § 271.2 states that: Eligible foods means any food or food product intended for human consumption except alcoholic beverages, tobacco, and hot food and hot food products prepared for immediate consumption.

7 CFR § 278.2(a) states that: Coupons [SNAP benefits] may be accepted by an authorized retail food store only from eligible households, and only in exchange for eligible food. Further, the citation specifies that coupons may not be accepted in exchange for cash, in payment of interest on loans, or for any other nonfood use.

7 CFR § 278.6(a) states that: FNS may disqualify any authorized retail food store . . . if the firm fails to comply with the Food and Nutrition Act of 2008, as amended, or this part. Such disqualification shall result from a finding of a violation on the basis of evidence that may include facts established through on-site investigations.

7 CFR § 278.6(e)(5) states that: a firm is to be disqualified for six months if it is to be the first sanction for the firm and the evidence shows that personnel of the firm have committed violations such as but not limited to the sale of common nonfood items due to carelessness or poor supervision by the firm's ownership or management.

7 CFR § 278.6(f)(1) states that, "FNS may impose a civil money penalty as a sanction in lieu of disqualification when the firm's disqualification would cause hardship to SNAP households because there is no other authorized retail food store in the area selling as large a variety of staple food items at comparable prices. FNS may disqualify a store which meets the criteria for a CMP if the store had previously been assigned a sanction. A CMP for hardship to SNAP households may not be imposed in lieu of a permanent disqualification.

## APPELLANT'S CONTENTIONS

The following may represent a summary of Appellant's contentions in this matter; however, in reaching a decision, full attention and consideration has been given to all contentions presented, including any not specifically recapitulated or specifically referenced herein:

- The owner apologizes for any violations and assures USDA that this violation will not happen again. The errors were caused by the new POS system that failed to differentiate between food and nonfood items. The issue was immediately addressed and has been fixed;
- The owner admits that the cashier should have knowledge of what to accept before making the sale on SNAP; and,
- The neighborhood is very dependable for SNAP and the elderly folks will have a hard time shopping elsewhere.

Appellant submitted no evidence or other rationales in support of these contentions.

3

## ANALYSIS AND FINDINGS

It is important to clarify for the record that the purpose of this review is to either validate or to invalidate the earlier decision of the Office of Retailer Operations and Compliance and is limited to what circumstances were at the basis of the action at the time such action was made. There is no provision in the SNAP regulations for waiver or reduction of an administrative penalty assessment on the basis of corrective actions implemented subsequent to investigative findings of program violations. Therefore, while the owner apologizing for the violations and assuring USDA that the violations will not happen again since the POS errors have been fixed are positive steps, they do not provide any valid basis for dismissing the charges, or for mitigating the penalty imposed. While store ownership may not have personally conducted the violative transactions, SNAP rules and regulations state that regardless of whom the ownership of a store may utilize to handle store business or their degree of involvement in store operations, that ownership is accountable for the proper training of staff and the monitoring and handling of all SNAP benefit transactions. Both the SNAP retailer application and retailer reauthorization application contain a certification page whereby applicants must confirm their understanding of and agreement with SNAP retailer requirements in order to complete the application/reauthorization process. Store ownership did certify its understanding and agreement to abide by program rules and regulatory provisions when it applied to become a SNAP retailer in June 2020. The ownership remains liable for all violative transactions handled by store personnel, whether paid or unpaid, new, full-time or part-time regardless of the amount of time the owner(s) is present at the subject firm. The certification is clear that store ownership understood by signing the document that violations of program rules can result in administrative actions such as fines, sanctions, withdrawal, or disqualification from the SNAP.

The investigative report states that the clerk self-identified himself to the investigator as being the store owner and the store's POS receipts provided to the investigator also list the cashier as being the owner. However, since clerks have been known to claim to be the store owner, and no other conclusive evidence exists that confirms the clerk responsible for the violations was, in fact, the store owner, the Office of Retailer Operations and Compliance treated these violations as having been conducted by a store employee, not the owner. Had conclusive evidence existed that the owner was the cashier, the disqualification period would have been for 12 months.

The FNS investigative report clearly shows that one employee working at the Appellant firm accepted SNAP benefits for ineligible items on four separate occasions during the investigative period indicating an ongoing pattern of SNAP violations as defined by Section 271.2 of the SNAP regulations. The report shows that the nature and scope of the violations under review do violate SNAP regulations, and the transaction amounts cited in the report also match FNS transaction records for the dates in question. Additionally, a review of the report shows no errors or discrepancies. There is no regulatory threshold for the dollar value of the ineligible items purchased or for the timeframe in which they were purchased. The acceptance of SNAP benefits for ineligible items is a violation of SNAP rules and regulations. The ineligible items sold were obvious nonfood items and would not readily be confused with eligible edible food items. SNAP regulations explicitly state that FNS shall disqualify a store for a six month period if it is to be the first sanction for the firm, and the evidence shows that personnel of the firm have committed

violations such as the sale of common nonfood items in exchange for SNAP benefits due to carelessness or poor supervision by the firm's ownership or management. SNAP regulations at 7 CFR § 278.6(e)(5) discuss the disqualification of firms for six months if it is to be the first sanction for the firm and the evidence shows that personnel of the firm have committed violations such as, but not limited to, the sale of common nonfood items due to carelessness or poor supervision by the firm's ownership or management. The applicable regulations do not specify intent as being a required element for a six month disqualification.

SNAP benefits, in general, are only authorized to be used for the purchase of foods for the household to eat as well as seeds and plants which produce food for the household to eat. The common nonfood items purchased are clearly not edible foods and are not plants or seeds, so one has to question the level of training this employee received by store ownership and/or management. The basic concept of "if you can't eat it, you can't buy it using SNAP" is not a difficult one for employees to grasp, yet this employee allowed the purchase of ineligible items using SNAP benefits on multiple occasions. Had an effective compliance policy and program been in effect at the firm, it is unlikely that this employee would have made such obvious mistakes. The more likely explanation is that store ownership and/or management failed to properly train and subsequently supervise this employee. Additionally, had store ownership and/or management been supervising this employee through occasionally monitoring him using videotape, if available, or in person, it would have readily noticed that he was allowing the sale of ineligible nonfood items in exchange for SNAP benefits. It also would have been immediately evident to store ownership and/or management that this employee was deficient in his knowledge of SNAP rules and regulations had it periodically spot checked his knowledge and abilities by asking questions about SNAP eligible/ineligible items. Either of these basic supervisory techniques would have provided a no cost method for store ownership and/or management to ensure that store employees were not putting the firm's SNAP license at risk. These are clear signs of poor or no supervision by store ownership and/or management.

It is highly improbable, based on the willingness of this employee to exchange SNAP benefits for ineligible nonfood items, that the only instances of SNAP violations were those transactions identified as part of the FNS undercover investigation. Common sense dictates that these actions more likely than not represented an ongoing pattern of SNAP violations at the Appellant firm. As previously stated, store ownership is responsible for all SNAP transactions at the firm and therefore a certain minimal level of oversight and training on the part of ownership to ensure employees, especially new employees, are not violating SNAP laws or regulations is expected. It would be unusual and irresponsible for store ownership to not have a program of ongoing supervision of employee performance and conduct by periodically monitoring store transactions, including those involving SNAP, and reviewing daily balance sheets to ensure store employees were not stealing from the firm or conducting other activities that would jeopardize the licenses and income that the firm is dependent upon. Under SNAP regulations, the penalty for allowing the purchase of ineligible nonfood items using SNAP benefits as the result of poor supervision by ownership or management is a six month disqualification. The regulations do allow SNAP retailers to pay a hardship CMP, if eligible, as explained in the next section.

5

Based on this discussion, the decision by the Office of Retailer Operations and Compliance to disqualify the firm for a six month period was the appropriate penalty and there is no valid basis for dismissing the charges or for mitigating the penalty imposed.

Regarding Appellant's explanations for the violations, while having a POS system that automatically distinguishes between SNAP eligible and other items is beneficial to reducing transaction times and avoiding pricing errors, it is not an acceptable substitute for training store employees as required by SNAP regulations. The POS system is only as good as the level of accuracy that items were entered into the data base so the likelihood of errors is always present and cashiers must be prepared to override the system if it says an ineligible item is eligible. Additionally, there are new and revised food items continually entering store stock that may not have been entered into the POS data base and POS systems also sometimes crash so cashiers must be trained to identify items that are and are not eligible for purchase using SNAP.

## CIVIL MONEY PENALTY

Appellant is not eligible for a trafficking CMP as these only apply in cases of permanent disqualifications. The matter under review is a term disqualification of six months and does not involve trafficking therefore a trafficking CMP cannot be considered under 7 CFR § 278.6.

A hardship CMP as an optional penalty in lieu of a six month disqualification was considered in this case. Such a finding is appropriate only if a store sells a substantial variety of staple food items and its disqualification would create a hardship to SNAP households because there is no other authorized retail food store in the area selling as large a variety of staple food items at comparable prices. FNS records show there are at least 17 comparably sized or larger SNAP retailers located within a 1.0 mile radius of Appellant's location that includes one superstore, two supermarkets, two medium grocery stores, and 12 convenience stores with the nearest supermarket and medium grocery store located 0.24 and 0.29 miles away or approximately four and six blocks away, respectively. There are many additional stores within the 1.0 mile radius. All of the comparable stores stock adequate varieties of food in all four staple food categories and in perishables as required by FNS.

The nearby stores appear readily accessible to SNAP recipients and offer a variety of staple foods comparable to, or better than, those offered by Appellant. It is acknowledged that some level of inconvenience to SNAP users is inherent in the disqualification from SNAP of any participating food store as the normal shopping pattern of such SNAP benefit holders may be altered. Inconvenience, however, does not rise to the level of hardship required by the regulations.

## CONCLUSION

A review of the evidence in this case supports that the program violations at issue did occur as charged. As noted previously, the charges of violations are based on the findings of a formal USDA investigation. All transactions cited in the letter of charges were conducted by USDA investigators and signed under penalty of perjury. A review of this documentation has yielded no indication of error or discrepancy in any of the reported findings. Rather, the investigative record

6

is specific and accurate with regard to the dates of the violations, the specific ineligible merchandise sold in exchange for SNAP benefits, and in all other critically pertinent detail. Accordingly, the determination by the Office of Retailer Operations and Compliance to impose a disqualification of six months against the Appellant firm from participating as an authorized retailer in SNAP is sustained. Furthermore, the Office of Retailer Operations and Compliance properly determined that Appellant was not eligible for a hardship CMP according to the terms of Section 278.6(f)(1) of the SNAP regulations as there are other authorized retail stores in the area selling as large a variety of staple foods at comparable prices.

In accordance with the Food and Nutrition Act, and the regulations thereunder, this penalty shall become effective thirty (30) days after receipt of this decision. A new application for SNAP participation may be submitted ten (10) days prior to the expiration of the six month disqualification period. When eligible, Appellant may reapply for SNAP authorization using the application instructions contained on the FNS web site. Questions regarding the application process can be answered by the FNS Retailer Service Center at 877-823-4369.

## RIGHTS AND REMEDIES

Applicable rights to a judicial review of this decision are set forth in 7 U.S.C. § 2023 and 7 CFR § 279.7. If a judicial review is desired, the complaint must be filed in the U.S. District Court for the district in which Appellant's owner resides, is engaged in business, or in any court of record of the State having competent jurisdiction. This complaint, naming the United States as the defendant, must be filed within thirty (30) days of receipt of this decision.

Under the Freedom of Information Act, we are releasing this information in a redacted format as appropriate. FNS will protect, to the extent provided by law, personal information that could constitute an unwarranted invasion of privacy.


ROBERT T. DEEGAN                                                May 19, 2021
ADMINISTRATIVE REVIEW OFFICER